UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JANET LAKEMAN,

    Plaintiff,

v.

PARTNERS HEALTHCARE
SYSTEM, INC.,

    Defendant.

CA: 05-11496 RCL

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
### ITS MOTION TO DISMISS COUNTS I, II AND IV OF THE COMPLAINT

The Defendant, Partners Healthcare System, Inc. ("Defendant" or "Partners"), submits the instant memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts I, II and IV of the Plaintiff's Complaint, which motion is filed herewith.[1]

### FACTS[2]

The Plaintiff was employed as a secretary at the Massachusetts General Hospital's Charlestown clinic for approximately ten years, from on or about May, 1994 through on or about July, 2004. Complaint, ¶¶ 4-5. During this period of time, the Plaintiff took leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, on four occasions. Id, ¶ 6. On or about January 30, 2003, the Plaintiff injured her Achilles tendon during the course of her employment. Id., ¶ 7. The Plaintiff applied for workers compensation benefits which were

---

[1] The Complaint alleges six causes of action against the Defendant, *viz*.: Wrongful Termination/ Violation of G.L. c. 152, § 75B (Count I); Wrongful Termination/Retaliation for Exercise of Legally Enforceable Rights (Counts II and III); Violation of Massachusetts Civil Rights Act, G.L. c. 12, § 11I (Count IV); Deceit/Fraud (Count V); and Negligent Misrepresentation (Count VI).

[2] For purposes of this Memorandum, the allegations contained in the Plaintiff's Complaint are taken as true.

1

initially denied, but were later paid.  Id., ¶¶ 8 and 18.

The Plaintiff took FMLA leave from on or about August 14, 2003 through November 3, 2003, for the purpose of having surgery to repair her left Achilles tendon.  Id., ¶¶ 11-13. Sometime after returning to work from her FMLA leave, the Plaintiff notified the MGH that "non-medical documentation" had been left in her medical file, and she requested that her medical records not be accessed in the future without her express authorization pursuant to HIPAA.  Id., ¶¶ 14-16.

On or about June 14, 2004, the Plaintiff met with Susan Loomis, the Director of Occupational Health Service.  Ms. Loomis asked the Plaintiff for permission to access her medical file to remove the documentation that had been inadvertently left in her medical file, but the Plaintiff declined the request.  During that same meeting, Ms. Loomis authorized the Plaintiff to "go out on workers compensation." Id., ¶¶ 16-17.

By telephone message on July 1, 2004, and by letter of the same date, the Plaintiff was notified that her employment had been terminated for "job abandonment."  Id., ¶¶ 20, 21 and 25. The Plaintiff called the Defendant on or about July 6th saying that she had not abandoned her job but had been "put out on workers comp. by Ms. Loomis." Id., ¶ 21.  On or about July 12, 2004, the Plaintiff told Ms. Loomis that her employment had been terminated and Ms. Loomis said she "would look into it … and take care of it." Id., ¶ 24.  On or about July 14, 2004, however, the Plaintiff received a letter confirming that her employment had been terminated.  Id., ¶ 25.

## ANALYSIS

I. Plaintiff's Common Law Claims For Wrongful Discharge In Counts I And II Of The Complaint Are Barred Due To The Availability Of State And Federal Statutory Remedies.

Counts I and II of the Complaint assert common law claims for wrongful discharge in violation of public policy on grounds that the Plaintiff's employment was terminated in

2

retaliation for her exercise of a legally enforceable right, *i.e*, the exercise of her rights under the workers compensation statute (Count I) and FMLA (Count II).  Complaint, ¶¶ 27-29 and 31-32.  It is well settled, however, that under Massachusetts law, a Plaintiff cannot bring a common law claim for wrongful discharge in violation of public policy where a statute already provides a vehicle for vindicating that public policy.  Grubba v. Bay State Abrasives Division of Dresser Indus., 803 F.2d 746, 747-748 (1st Cir. 1986); Ourfalian v. Aro Mfg. Co., 31 Mass. App. Ct. 294, 296 (1991).

In the instant case, the Massachusetts workers compensation statute provides a remedy for persons who allege to have been retaliated against on account of their exercise of rights under the statute.  See Mass. Gen. Laws c. 152, § 75B (providing private right of action for retaliation).  Similarly, FMLA provides a remedy for persons who allege to have been retaliated against on account of their exercise of rights under that statute.  See 29 U.S.C. §§ 2615 and 2617 (providing private right of action for persons discharged or discriminated against on account of their exercise of rights under FMLA).  As such, the Plaintiff's common law claims in Counts I and II of the Complaint must be dismissed.  See Magerer v. Sexton & Co., 727 F. Supp. 744 (D. Mass. 1990) (dismissing common law claim for wrongful discharge in retaliation for exercise of rights under the workers compensation statute), aff'd, 912 F.2d 525 (1st Cir. 1990); Desrochers v. Hilton Hotels Corp., 28 F. Supp. 2d 693, 695 (D. Mass. 1998) ("the comprehensive detailed enforcement provisions of FMLA show Congress' intention that the specific remedies set forth in Section 2617 of the FMLA are the exclusive remedies for the violation of the FMLA"); Hansen v. J.L. Hammett Int'l, Inc., 1999 Mass. Super. LEXIS 424, *14-15 (1999) (a plaintiff may not recover for wrongful termination in violation of public policy where the FMLA provides a statutory remedy for such violation).

> II.  Count IV Of Plaintiff's Complaint, Alleging Violation Of The Massachusetts Civil Rights Act, Is Barred By FMLA And By Its Failure To Properly Allege Coercion, An Essential Element Of The Claim.

The Plaintiff alleges that the Defendant violated the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws c.12, § 11I by (1) terminating her employment for exercising her rights under the workers compensation statute; (2) terminating her employment for exercising her rights under FMLA; and (3) terminating her employment for exercising her rights under HIPAA. Complaint, ¶¶ 40-42.  Even if true (which they are not), none of these allegations state a claim for relief under MCRA.

First, to the extent that the Plaintiff bases her MCRA claim on the Defendant's alleged violation of FMLA, such a claim cannot stand as Congress intended that the specific remedies set forth in Section 2617 of FMLA are the exclusive remedies for a violation of FMLA.  See Desrochers, 28 F. Supp. 2d at 695 ("plaintiffs are not entitled to bypass Congress' exclusive remedial scheme for enforcement of their FMLA rights by bringing a state MCRA cause of action").

Second, in order to set forth a MCRA claim, a plaintiff must allege that the defendant interfered with the plaintiff's protected rights by the use of "threats, intimidation or coercion." See Mass. Gen. Laws c. 12, §§ 11H and 11I; Deas v. Dempsey, 403 Mass. 468, 470 (1988) (Legislature did not intend to create a vast constitutional tort, and thus it limited recovery to those instances where the deprivation occurred by the defendant's threats, intimidation or coercion).   While a Complaint should be read liberally to determine whether the claim alleged "is capable of being supported by any conceivable set of facts", the Complaint must set forth more than conclusory allegations.  Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982).  Here, even a liberal reading of the Complaint does not reveal any facts to support the

Plaintiff's conclusory allegation of coercion.

The Massachusetts Civil Rights Act does not define actionable "coercion." Massachusetts courts have held that actionable coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Buster v. Moore, Inc., 438 Mass. 635, 646-647 (2003). The American Heritage dictionary defines "coerce" as: "1. To force to act or think in a certain way by use of pressure, threats or intimidation. 2. To dominate, restrain, or control forcibly. . . . 3. To bring about by force or threat." The American Heritage Dictionary of the English Language (Houghton Mifflin Co.)(3d Ed., 1992), p. 367.

The types of actions necessary to demonstrate coercion are generally limited to those involving actual or attempted physical force. See, e.g., Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 473-474 (standing in doorways of abortion clinics in order to delay or prevent abortions constituted coercion under MCRA); cert denied, 513 U.S. 868 (1994); Batchelder v. Allied Stores Int'l, Inc., 388 Mass. 83, 85 (1983) (threat of arrest or removal by security guard); Bell v. Mazza, 394 Mass. 176, 179-180 (1985) (physical threat and threat to do "anything," "at any cost" to keep plaintiffs from exercising their rights); Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 95 (1987) (threat of disruptions, implicating physical safety and integrity of performance); O'Connell v. Chasdi, 400 Mass. 686, 687-688, 691 (1987) (sexual harassment, involving threat of loss of employment). In certain circumstances, economic coercion may also be sufficient to state a claim under MCRA. Buster, 438 Mass. at 648.

The Plaintiff alleges that "[b]y expressly instructing and authorizing [the Plaintiff] to 'go out on workers compensation' with the knowledge, objective and intent to have her abandon her position at the Charlestown clinic, [the Defendant] . . . engaged in acts of coercion and deceit relative to [the Plaintiff]." Complaint, ¶ 39. There is no suggestion that pressure, threats or

5

intimidation were used by the Defendant to convince the Plaintiff to "go out on workers compensation" against her will. In fact, quite to the contrary, the Plaintiff had applied for and desired to go out on workers compensation. Complaint, ¶¶ 8, 10, and 16. Thus, even if, as the Plaintiff alleges (which the Defendant denies), the Defendant induced the Plaintiff to abandon her job, such action does not constitute "coercion" and is not actionable under MCRA. Appleton v. Hudson, 397 Mass. 812, 816-817 (1986) (affirming dismissal of MCRA claim where facts alleged do not support coercion). See Serrano v. Collazo Torres, 764 F.2d 47, 48-49 (1st Cir. 1985) (complaint must set forth facts to support the claim, not simply conclusory allegations); McDonough v. Fair, 1986 U.S. Dist. LEXIS 18262 (1986) (dismissing complaint where plaintiff failed to plead facts supporting conclusory allegations).

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss Counts I, II and IV of the Complaint should be ALLOWED.

>Respectfully submitted,
>
>PARTNERS HEALTHCARE SYSTEM, INC.,
>
>By its Attorneys,
>
>PRINCE, LOBEL, GLOVSKY & TYE LLP
>
>By   */s/ Jeffrey A. Dretler*
>   Jeffrey A. Dretler, BBO# 558953
>   585 Commercial Street
>   Boston, MA  02109
>   (617) 456-8000

6

<u>CERTIFICATE OF SERVICE</u>

   I, Jeffrey A. Dretler, attorney for the Defendant in the above-captioned matter, hereby certify that on this 21st day of July, 2005, I served the within document upon all parties of record by delivering, via first class mail, postage pre-paid, a copy thereof to: Paul K. Baker, Esq., Baker & Abraham, P.C., 30 Rowes Wharf, Boston, MA 02110.

                /s/ Jeffrey A. Dretler
                Jeffrey A. Dretler