UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANET LAKEMAN,<br>    Plaintiff<br>v.<br><br>PARTNERS HEALTHCARE SYSTEM, INC.,<br>    Defendant | )<br>)<br>)   C.A. No. 05-11496 RCL<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

The Plaintiff, Janet Lakeman, by her attorneys, Baker & Abraham, P.C., complaining of the Defendant, respectfully alleges:

### PARTIES

1. The Plaintiff, Janet Lakeman (hereinafter "Mrs. Lakeman"), is a resident of the Commonwealth of Massachusetts, residing at 92 Dunstable Street, Charlestown, Suffolk County, Massachusetts.

2. The Defendant, Partners Healthcare System, Inc. (hereinafter "Partners"), is a corporation duly organized and existing under the laws of the State of Massachusetts, with a usual place of business at 800 Boylston Street, Boston, Massachusetts.

### FACTS

3. At all times relevant hereto, Partners owned, operated and/or managed healthcare facilities in the Commonwealth of Massachusetts, including the Massachusetts General Hospital and its satellite facilities or "clinics."

4. As of July 7, 2004, Plaintiff, Mrs. Lakeman was employed by and through the Defendant, Partners, as a secretary at the Massachusetts General Hospital Healthcare Center (hereinafter the "Charlestown clinic") located in Charlestown, Massachusetts.

5.     Mrs. Lakeman had been employed by the Defendant, Partners, or a predecessor-in-interest, at the Charlestown clinic, since May, 1994.

6.     During the course of her 10-year employment history with Partners, Mrs. Lakeman had taken leave, pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. 28, on four occasions.

7.     On or about January 30, 2003, Mrs. Lakeman was injured in the course of her employment at the Charlestown clinic, when she slipped and fell on computer and telephone cables, sustaining injury to her Achilles tendon. Mrs. Lakeman's work-related accident was witnessed by several of her co-workers and, additionally, her resulting injuries were deemed work-related by her treating physicians.

8.     Sometime subsequent to the accident of January 30, 2003, Mrs. Lakeman was informed by a representative of Partners that it would not make voluntary payment of workers compensation benefits absent a court order, i.e., that Mrs. Lakeman would have to successfully prosecute a workers compensation claim resulting in an Order for Payment before Partners would tender any wage or medical benefits.

9.     Sometime subsequent to the accident of January 30, 2003, Mrs. Lakeman was informed by her surgeon, William Theodore, M.D., that her medical condition necessitated surgical intervention.

10.    Due to Partners' refusal to voluntarily pay workers compensation benefits to or on behalf of the Plaintiff, Mrs. Lakeman was required to forego surgery and continue working until she accrued sufficient time to request leave pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. 28. During this time, Mrs. Lakeman was required to wear an air cast on her left foot/ankle in an effort to avoid additional injury while working.

11.    On or about August 14, 2003, Mrs. Lakeman exercised her right to Family Medical Leave for the purpose of undergoing surgery to repair her left Achilles tendon.

12. The surgery necessitated by Mrs. Lakeman's work-related injuries resulted in her absence from work from August 14, 2003 until approximately November 3, 2003. During this absence, Partners continued to refuse to voluntarily pay workers compensation benefits to or on behalf of Mrs. Lakeman.

13. Mrs. Lakeman returned to work at the Charlestown clinic on or about November 3, 2003.

14. After returning to work at the Charlestown clinic on or about November 3, 2003, Mrs. Lakeman discovered that Partners' employees had been accessing her medical records without her authorization, as evidenced by non-medical documentation that had been left in her medical records.

15. Mrs. Lakeman brought this discovery to the attention of certain employees and representative of Partners, and requested that access to her private and confidential medical records not be allowed absent her authorization pursuant to Health Insurance Portability and Accountability Act (HIPAA).

16. On or about June 14, 2004, Partners' Director of Occupation Health Services, Ms. Susan Loomis, initiated a private meeting between herself and Mrs. Lakeman. At this meeting, Ms. Loomis apologized and took direct responsibility for the denial of Mrs. Lakeman's workers compensation claim, and expressed concern for the additional medical issues that had resulting from Mrs. Lakeman continuing to work while injured. Ms. Loomis also requested Mrs. Lakeman's permission to access her medical records for the purpose of removing the non-medical documentation that had been inadvertently left in her records. Mrs. Lakeman declined this request, and requested that her medical record remain completely intact.

17. During the meeting of June 14, 2004, Ms. Loomis expressly instructed and authorized Mrs. Lakeman to "go out on workers compensation" and obtain the medical care necessary to address the conditions that had resulted from Partners' refusal to honor her workers compensation claim.

18.     On or about June 15, 2004, Partners agreed to pay workers compensation benefits to Mrs. Lakeman for the 14-week period of time she was absent from work due to her surgery.

19.     Mrs. Lakeman relied upon the express instruction of Partners' agent and employee, took leave of work and began to seek and obtain physical therapy treatment for her left leg, back and hips.

20.     On or about July 1, 2004, Mrs. Lakeman received a telephone message an employee of Partners informing her that "she had abandoned her position at the clinic" and was therefore terminated.

21.     On or about July 6, 2004, Mrs. Lakeman responded to Partners, advising that she had not abandoned her position, but rather, had been "put out on workers comp. by Ms. Loomis."

22.     On or about July 7, 2004, Mrs. Lakeman received correspondence from Partners, dated July 1, 2004, informing her that her employment at the Charlestown clinic was terminated.

23.     On or about July 12, 2004, Mrs. Lakeman was informed by Ms. Loomis that she (Ms. Loomis) had accessed Mrs. Lakeman's medical record, despite Mrs. Lakeman's prior, explicit request to the contrary, and removed from the record twenty-two (22) pages of non-medical documentation.

24.     On or about July 12, 2004, Mrs. Lakeman informed Ms. Loomis of the telephone message and correspondence she had received wherein she was accused of "abandoning her position" and of her termination. Ms. Loomis expressed surprise and concern in response to this information, and advised Mrs. Lakeman that she "would look into it...and take care of it."

25.     On or about July 14, 2004, Mrs. Lakeman received written notification from Partners that her employment at the Charlestown clinic had been terminated.

COUNT I
VIOLATION OF G.L. c. 152, §75B

26. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1-25.

27. The Plaintiff asserted her legally enforceable right to initiate a claim for workers compensation benefits pursuant to G.L. c. 152, §10, following her work-related accident of January 30, 2003.

28. Defendant Partners discharged the Plaintiff in retaliation for initiating a claim for workers compensation benefits pursuant to G.L. c. 152, and in so doing, violated G.L. c. 152, §75B.

WHEREFORE, the Plaintiff prays judgment and damages of the Defendant herein, in a sum to be determined by the trial of this action, plus interest and costs as provided by law.

COUNT II
VIOLATION OF 29 U.S.C. 2615 (a)(2)
FAMILY MEDICAL LEAVE ACT

29. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1-25.

30. As of January 30, 2003, the Plaintiff was eligible for leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 and, as an employee of Partners, was employed by an entity covered by the FMLA.

31. Following her work-related accident of January 30, 2003, the Plaintiff asserted her rights under the FMLA.

32. Thereafter, the Plaintiff suffered an adverse employment action at the hands of Partners, to wit: Partners discharged the Plaintiff from employment for which she was qualified and able on or about July 14, 2004.

33. Defendant Partners' discharge of the Plaintiff was in retaliation for the Plaintiff's assertion of her rights relative to the FMLA, and therefore in violation of specific provisions of the FMLA, 29 U.S.C. 2601.

   WHEREFORE, the Plaintiff prays judgment and damages of the Defendant herein, in a sum to be determined by the trial of this action, plus interest and costs as provided by law.

## COUNT III
## WRONGFUL TERMINATION/
## RETALIATION FOR EXERCISE OF LEGALLY ENFORCEABLE RIGHTS

34. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1-25.

35. Following her work-related accident of January 30, 2003, the Plaintiff asserted her legally enforceable rights under Health Insurance Portability and Accountability Act ("HIPAA"), Privacy Rule, 45 CFR Parts 160 – 164, by requesting that access to her private and confidential medical records not be gained absent her express written consent pursuant to HIPAA.

36. As Defendant Partners' discharge of the Plaintiff was in retaliation for the Plaintiff's assertion of a legally enforceable right relative to HIPAA, said termination was in contravention of clearly established public policy and is therefore actionable.

   WHEREFORE, the Plaintiff prays judgment and damages of the Defendant herein, in a sum to be determined by the trial of this action, plus interest and costs as provided by law.

## COUNT IV
## DECEIT/FRAUD

37. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1-25.

38. Defendant Partners, by and through its employee, Susan Loomis, expressly instructed and authorized Mrs. Lakeman to "go out on workers compensation" with the knowledge, objective and intent to have her abandon her position at the Charlestown clinic.

39. In so instructing Mrs. Lakeman, Defendant Partners, by and through its employee, Susan Loomis, fraudulently misrepresented certain facts, opinions and/or intentions for the purpose of inducing Mrs. Lakeman to act thereon.

40. Mrs. Lakeman relied upon the fraudulent misrepresentations of Partners to her detriment, to wit: Mrs. Lakeman took leave of her position upon the instruction of Partners' agent, employee and representative, Ms. Loomis, and thereafter was discharged for abandoning her position.

WHEREFORE, the Plaintiff prays judgment and damages of the Defendant herein, in a sum to be determined by the trial of this action, plus interest and costs as provided by law.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

41. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1-25.

42. Defendant Partners, by and through its employee, Susan Loomis, expressly instructed and authorized Mrs. Lakeman to "go out on workers compensation" with the knowledge, objective and intent to have her abandon her position at the Charlestown clinic.

43.  In so instructing Mrs. Lakeman, Defendant Partners, by and through its employee, Susan Loomis, provided false information for the guidance of Mrs. Lakeman and failed to exercise reasonable care and/or competence in this provision of advice, instruction or guidance, upon which Mrs. Lakeman justifiably relied.

44.  Mrs. Lakeman's reliance upon the advice, instruction or guidance provided by Partners resulted in great pecuniary loss to Mrs. Lakeman, to wit: Mrs. Lakeman was terminated by Partners shortly after following the advice, instruction or guidance of Partners' agent, employee and representative, Ms. Loomis.

WHEREFORE, the Plaintiff prays judgment and damages of the Defendant herein, in a sum to be determined by the trial of this action, plus interest and costs as provided by law.

*PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY AS TO ALL ISSUES.*

The Plaintiff, Janet Lakeman,
By Her Attorneys,

Paul K. Baker, BBO #631221
Andrew M. Abraham, BBO#631167
BAKER & ABRAHAM, P.C.
30 Rowes Wharf
Boston, MA 02110
(617) 330-1330